IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WIDLINE DALAMBERT-DUCENA
and WOLF DUCENA,

                    Plaintiffs,

          v.                              CIVIL ACTION FILE NO.

OCWEN FINANCIAL                           1:14-CV-03025-TWT-GGB
CORPORATION,

                    Defendant.

## FINAL REPORT AND RECOMMENDATION

## AND ORDER

Plaintiffs Widline Dalamberg-Ducena and Wolf Ducena ("Plaintiffs") are proceeding in this action *pro se*. This matter is before the Court on the Rule 12(b)(6) Motion to Dismiss [Doc. 4] filed by the defendant, Ocwen Financial Corporation ("Defendant" or "OFC"). Also before the Court are Plaintiffs' responses [Docs. 5, 6, 9, and 10], which have been improperly denominated by the Plaintiffs and on the court docket as motions to dismiss.

## I. PROCEDURAL BACKGROUND

Plaintiffs originally filed their verified complaint for declaratory judgment and injunctive relief in the Superior Court of Henry County, Georgia on July 31, 2014 in

an apparent effort to forestall a foreclosure sale of real property that was scheduled to take place on August 5, 2014.  [Doc. 1-1 at 2, Complaint; Doc. 4-1 at 1-4].  Defendant OFC was served with the summons and complaint on August 20, 2014, and timely removed the case to this court on September 19, 2014 on the basis of federal question jurisdiction.  [Doc. 1, Notice of Removal, at 1-2].

Plaintiffs' complaint asserts the following grounds for relief: "newly discovered evidence of Fraud on the part of the defendant in a foreclosure action Scheduled for August 5, 2014," unspecified fraudulent practices of the defendant, and "denial of due process/fair trial."  [Doc. 1-1  at 3].  The complaint makes passing references to fraud, misrepresentation, deceit, bank fraud, constructive fraud, bad faith, lack of full disclosure, forgery, and deprivation of due process, but none of the references are supported by factual allegations.  [Id. at 4].

The complaint contains no separate counts for relief, but generally alleges the following causes of action: (1) that Defendant OFC created a contract, which was void, because the lending officer lacked power under its federal bank charter to loan the Plaintiffs credit; (2) Defendant OFC violated unspecified usury laws; and (3) Defendant OFC through its conduct defrauded Plaintiffs and violated federal banking law, 12 U.S.C. § 24(7).  [Id. at 4-6].  The *pro se* Plaintiffs also seek attorney's fees and

2

costs under the Civil Rights Attorney's Fee Award Act of 1976, as amended, 42 U.S.C. § 1988.  [Id. at 6 ¶ 6].

On September 26, 2014, Defendant OFC filed a Rule 12(b)(6) motion to dismiss Plaintiffs' complaint for failure to state a claim.  [Doc. 4].  On October 9, 2014, Plaintiffs filed a nonsensical response titled, "Motion to Dismiss Mark J Windham's Motion to Dismiss."  [Doc. 5].  Attorneys Mark J. Windham and Marlee Jean Waxelbaum (with the law firm Troutman Sanders, LLP) represent the defendant, OFC, in this matter.  In light of Plaintiffs' *pro se* status and because it is clear to the Court that Plaintiffs oppose OFC's motion to dismiss, the Court will construe Plaintiffs' "motion to dismiss" [Doc. 5] as Plaintiffs' response in opposition to OFC's motion to dismiss.  OFC filed a reply in support of its motion to dismiss on October 27, 2014. [Doc. 7].

On October 9th, Plaintiffs also filed a "Notice of Objection to Removal of Case and Motion to Dismiss" objecting to OFC's removal of the case to federal court. [Doc. 6].  OFC filed a response [Doc. 8] to Plaintiffs' objections on October 27, 2014. Both OFC's reply in support of its motion to dismiss [Doc. 7] and response to Plaintiffs' objections to removal [Doc. 8] were filed by Marlee Maxelbaum, Esq. on behalf of OFC.

3

On November 17, 2014, Plaintiffs filed two additional responses.  The document at Docket Entry 9 is entitled, "Motion to Dismiss Marlee Maxelbaum's Reply in Support of Mark J. Windham's Motion to Dismiss."  [Doc. 9].  The second document (filed as Docket Entry 10) is entitled, "[Plaintiffs'] Motion to Dismiss Marlee Maxelbaum Response to Notice of Objection to Mark J. Windham's Removal of Case and Motion to Dismiss."  [Doc. 10].  Both additional responses are in effect unpermitted surreplies in opposition to OFC's briefs.

Local Rule 7.1 contemplates the filing of responses to pending motions, LR 7.1(B), NDGa., and permits, but does not require as a matter of routine practice, the filing of one reply brief.  LR 7.1(C).  Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies.  Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief.  Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005) (quotations marks and internal citations omitted).

Plaintiffs have already filed responses to both OFC's notice of removal and motion to dismiss.  OFC's replies do not raise any new arguments.  Plaintiffs did not seek leave of Court to file their surreplies, as this Court normally requires.  Since

4

Plaintiffs have not shown a valid reason for the Court to consider additional briefing, the Court has not considered Plaintiffs' surreplies [Docs. 9 & 10] in addressing Defendant OFC's motion to dismiss and/or notice of removal.

## II.  FACTUAL BACKGROUND

This dispute arises out of the non-judicial foreclosure sale of the real property located at 505 Mellview Court, Stockbridge, Henry County, Georgia, 30281 (the "Property").  On or about July 11, 2006, Plaintiff Widline Dalamberg-Ducena obtained a $230,100 loan (the "Loan") from SouthStar Funding, LLC ("Lender") to purchase or finance the Property at issue in this litigation.  A note was signed, and the Plaintiffs executed a security deed to secure repayment of the Loan on the Property.  [Doc. 4-2 ("Note"); Doc.  4-3 ("Security Deed")].[1]  The Security Deed granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), and to MERS's successors and

---

1 The Court has taken Defendant's exhibits into consideration in reviewing the merits of its motion to dismiss, without converting the motion to a motion for summary judgment, because in Plaintiffs' complaint, Plaintiffs refer to the transactions memorialized in the exhibits, the documents are central to Plaintiffs' claims, and the authenticity of the exhibits has not been challenged.  See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal").  A district court may also take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion.  Serpentfoot v. Rome City Comm'n, 322 F. App'x 801, 807 (11th Cir. 2009) (citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999)).

assigns, the power of sale in the event that Plaintiffs defaulted on their Loan repayment obligations. The Security Deed was subsequently assigned to The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A., as Trustee for Residential Asset Mortgage Products, Inc., Mortgage Asset-Backed Pass-Through Certificates Series 2006-RZ4 ("BNY Mellon"). [Doc. 4-4, "Assignments"]. At all relevant times, Ocwen Loan Servicing, LLC ("OLS") serviced the Loan.[2]

After Plaintiffs failed to make one or more payments required under the 2006 Note, OLS, on behalf of BNY Mellon, retained foreclosure counsel to begin foreclosure proceedings on the Property. [Docs. 4-5, 4-6, 4-7]. The foreclosure sale proceeded as scheduled on August 5, 2014, pursuant to which BNY Mellon took back the Property for a credit bid. [Doc. 4-1 at 4].

On July 31, 2014, Plaintiffs initiated this action by filing their verified complaint in the Superior Court of Henry County. As noted above, the complaint seeks, *inter alia*, an injunction against the August 5, 2014 foreclosure sale, a declaratory judgment, and attorney's fees and costs. [Doc. 1-1 at 5-6]. OFC was served with process on

_____

2  Defendant states that OLS is a second-tier, wholly-owned subsidiary of Ocwen Financial Corporation ("OFC"), the sole named defendant in this action, and that OFC has no relationship to the Loan at issue in this case. [Doc. 4-1 at 3 n.5]. Plaintiffs have not disputed Defendant's statement.

6

August 20, 2014, and timely removed the case to this court on September 19, 2014.

Defendant OFC's motion to dismiss and Plaintiffs' objections to OFC's removal have

been briefed and are before the Court for consideration.

## III. DISCUSSION

### A.   Plaintiffs' Objections to Notice of Removal

The Court will first address Plaintiffs' objections to Defendant's removal of this

case to federal court.   Plaintiffs contend that this Court lacks subject matter

jurisdiction.  [Doc. 6 at 11].

Like Plaintiffs' complaint, Plaintiffs' "Notice of Objection to Removal of Case

and Motion to Dismiss" is difficult to decipher and includes a hodgepodge of bald

assertions, conclusory allegations, repetitive and unsupported objections, and

nonsensical legalese.  Plaintiffs have cut and pasted the exact same objection to every

single numbered paragraph in Defendant's Notice of Removal.  The "objection" reads

as follows:

> Counsel Mark J. Windham is not a party to the action and
> Counsel Mark J. Windham is attempting to testify for a
> witness not in appearance.  Mark J. Windham has placed **no
> facts** on the record.  No fact appears on record whether by
> deposition, admission; answer to interrogatory, or by
> affidavit to support the averments of Counsel Mark J.
> Windham's, notice of removal, is irrelevant, and
> inadmissible.  Documents proffered by counsel Mark J.
> Windham opinions are unverified, out-of-date, irrelevant,

> and inadmissible. "Statements of counsel, in their briefs or
> their arguments are not sufficient for a motion to dismiss or
> for summary judgment." [Citations omitted].

[Doc. 6 at 1-10]. Plaintiffs' objection fails to articulate any valid legal basis for

remand.

Pursuant to 28 U.S.C. § 1441(a), a civil action originally filed in a state court

may be removed to federal district court if the district court has original subject matter

jurisdiction over the case. The burden is on the party seeking removal to establish

federal subject matter jurisdiction. Friedman v. N.Y. Life Ins. Co., 410 F.3d 1350,

1353 (11th Cir. 2005); see also Buice v. Buford Broad., Inc., 553 F. Supp. 388, 390

(N.D. Ga. 1983). "If at any time before final judgment it appears that the district court

lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

In its notice of removal, Defendant OFC invokes federal question jurisdiction.

"Only state-court actions that originally could have been filed in federal court may be

removed to federal court," and, "[a]bsent diversity of citizenship, federal-question

jurisdiction is required." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); see

also 28 U.S.C. § 1441(b). District courts have federal-question jurisdiction over "all

civil actions arising under the Constitution, laws, or treaties of the United States."

Caterpillar, 482 U.S. at 392 n.6 (quoting 28 U.S.C. § 1331). Generally, "a case 'arises

under' federal law if federal law creates the cause of action, or if a substantial disputed

8

issue of federal law is a necessary element of a state law claim." <u>Pacheco de Perez v. AT&T Co.</u>, 139 F.3d 1368, 1373 (11th Cir. 1998) (citation omitted). Accordingly, for removal to be proper, one or more of Plaintiffs' claims must have arisen under federal law.

The presence or absence of federal question jurisdiction is governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. <u>See</u> <u>Caterpillar</u>, 482 U.S. at 392 (citing <u>Gully v. First Nat'l Bank</u>, 299 U.S. 109, 112-13 (1936)). Under the well-pleaded complaint rule, the plaintiff is "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." <u>Id.</u>; <u>Bank of New York v. Wilson</u>, No. 1:08-cv-332-TWT, 2008 WL 544741, at *1 (N.D. Ga. Feb. 25, 2008).

Plaintiffs' complaint sets forth eighteen enumerated "facts" that for the most part allege circumstances that do not seem to relate to the named defendant in this case. The complaint does not assert any specific causes of action, but rather generally alleges the roundly-rejected theories known as the "vapor money" or "unlawful money" theories to support Plaintiffs' contentions that somehow they do not owe money on their Loan and that the Loan transaction in some way involved recording a forged promissory note as an unauthorized loan from "plaintiff" to an unidentified bank.

AO 72A
(Rev.8/82)

[Compl. ¶¶ 11-20]. Although the facts set forth in Plaintiffs' complaint are sparse, the complaint does allege that Defendant OFC violated "Federal Banking Law 12 USC § 24(7)," and that Plaintiffs are entitled to attorney's fees and costs in connection with civil rights violations pursuant to 42 U.S.C. § 1988. [Id. at 3-5]. See Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 386 (1998) ("[T]he presence of even one claim 'arising under' federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal.").

Federal Banking Law 12 U.S.C. § 24(7) and 42 U.S.C. § 1988 are laws of the United States within the meaning of 28 U.S.C. § 1331. See Buckley v. Bayrock Mortgage Corp., No. 1:09-CV-1387-TWT, 2010 WL 476673, at *4 (N.D. Ga. Feb. 5, 2010). Similarly, Plaintiffs' assertion of rights "under the Seventh Amendment to the United States Constitution," though unsupported by other factual allegations, raises a federal question. [Doc. 1-1 at 3]. Since federal questions are presented on the face of Plaintiffs' state court complaint, this Court has subject matter jurisdiction over this removed action pursuant to § 1331. Buckley, 2010 WL 476673, at *4 (citing Hill v. BellSouth Telecomms., Inc., 364 F.3d 1308, 1317 (11th Cir. 2004)).

Plaintiffs' objections to Defendant's notice of removal are without merit. For the reasons discussed above, Plaintiffs' objections are overruled. To the extent the objections are more properly treated as a motion to remand, I recommend that

10

Plaintiffs' motion to remand for lack of subject matter jurisdiction [Doc. 6] be

**DENIED**.

**B.      Defendant's Rule 12(b)(6) Motion to Dismiss**

**1.      Legal Standards**

In order to survive a motion to dismiss, a complaint need not contain "detailed

factual allegations," but must "'give the defendant fair notice of what the ... claim is

and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555,

127 S. Ct. 1955, 1964 (2007) (citation omitted); Ashcroft v. Iqbal, 556 U.S. 662, 129

S. Ct. 1937, 1950-51 (2009).

In Iqbal, the Supreme Court clarified the pleading standard for civil actions,

stating:

> [T]he pleading standard Rule 8 announces does not require
> detailed factual allegations, but it demands more than an
> unadorned, the-defendant-unlawfully-harmed-me
> accusation. A pleading that offers labels and conclusions or
> a formulaic recitation of the elements of a cause of action
> will not do. Nor does a complaint suffice if it tenders naked
> assertions devoid of further factual enhancement.
>
> To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to state a claim to
> relief that is plausible on its face. A claim has facial
> plausibility when the plaintiff pleads factual content that
> allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged. The
> plausibility standard is not akin to a probability requirement,

> but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. at 678, 129 S. Ct. at 1949 (internal quotes and citations omitted).

The Iqbal Court went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint.  Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss," the Supreme Court then advised that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Id. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted).  All reasonable inferences are to be made in favor of the plaintiff.  Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).

Complaints filed *pro se* are to be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted).  Nevertheless, a *pro se* plaintiff must still comply with the threshold requirements of the Federal Rules of

AO 72A
(Rev.8/82)

Civil Procedure.  "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief." <u>Grigsby v. Thomas</u>, 506 F. Supp. 2d 26, 28 (D.D.C. 2007).

### 2.    Discussion

Applying these standards, I conclude that the Defendant's motion to dismiss should be granted.  To the extent Plaintiffs' factual allegations can be discerned, they are far from sufficient to support any of the claims that Plaintiffs have asserted against the Defendant in this action with regard to the loan at issue in this case.  Plaintiffs' complaint fails to satisfy the rudimentary pleading requirements of Rule 8(a) and, with respect to Plaintiffs' allegations of fraud, the heightened pleading requirements of Fed. R. Civ. P. 9(b).

### a.    "Ultra vires" Contract and Violation of Usury Laws

Plaintiffs generally allege in their complaint that "defendant" entered into an "ultra vires" contract with Plaintiffs, violated the law of usury by charging interest on credit rather than money, and through its conduct, defrauded Plaintiffs in unspecified ways, in violation of Federal Banking Law 12 U.S.C. § 24(7).  [Doc. 1-1 at 5].

Plaintiffs' "ultra vires contract" claim is without merit.  There are no factual allegations in Plaintiffs' complaint to support a claim that Defendant Ocwen Financial Corporation ever entered into any written contract with Plaintiffs.  Rather, the Note and

13

Security Deed on the Property at issue in this case reflect that SouthStar Funding, LLC was the original lender and signator, and the Security Deed was later assigned to BNY Mellon. The record before this Court shows that Ocwen Loan Servicing, LLC -- not Ocwen Financial Corporation (the defendant in this case) -- was the loan servicer on Plaintiffs' Loan. Plaintiffs' complaint fails to identify what contract they are referring to, when it was signed and by whom, and what terms it contained. The complaint also fails to provide any factual support for Plaintiffs' allegation that "defendant created a contract, which was void," and that the contract was "ultra vires" because an unidentified lending officer did not "have the power under the Bank Charter to loan [ ] the plaintiff credit." [Doc. 1-1 at 5].

A *pro se* plaintiff's basis for relief "requires more than labels and conclusions ...." Twombly, 550 U.S. at 555. Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Conclusory statements and insufficient factual allegations will not survive a motion to dismiss under Rule 12(b)(6), even when asserted by *pro se* plaintiffs. Plaintiffs' contract allegations do not contain sufficient factual information to state a claim to relief against Defendant OFC that is plausible on its face. See Twombly, 550 U.S. at 570.

14

The same applies to Plaintiffs' allegation that "defendant" violated usury laws. Under Georgia law, the term "usury" means "reserving and taking or contracting to reserve and take, either directly or indirectly, a greater sum for the use of money than the lawful interest."  O.C.G.A. § 7-4-1.  The legal rate of interest in Georgia is 7 percent per annum simple interest where the rate percent is not established by written contract.  O.C.G.A. § 7-4-2.  However, where, like here, parties enter into a written contract (such as a note or security deed), "the parties may establish by written contract any rate of interest ... where the principal amount involved is more than $3,000.00 but less than $250,000.00 or where the lender or creditor has committed to lend, advance, or forbear with respect to any loan, advance, or forbearance to enforce the collection of more than $3,000.00 but less than $250,000.00."  Id.  Plaintiffs' Note indicates that the amount of the subject Loan on the Property was $230,100.00.  Plaintiffs have failed to allege or show that there are any restrictions on the amount of interest which may be paid under the laws of the State of Georgia on a loan in that amount.

Plaintiffs' allegations that some unidentified contract is "ultra vires" and violates Georgia's usury laws are without merit and fail to state a plausible claim. Accordingly, I recommend that the claim(s) be dismissed.

### b.    "Vapor Money/Unlawful Money" Theories

To the extent Plaintiffs are basing their claims on the universally discredited

"vapor money/unlawful money" theories, those claims are also due to be dismissed.

A U.S. district court in Ohio accurately described the "vapor money" theory as follows:

> Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that [the lender] took his "money," *i.e.*, the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that [the lender] did not actually have the funds available to lend to him, but instead "created" the money through its bookkeeping procedures. He further argues that because [the lender] was never at risk, and provided no consideration, the promissory note is void *ab initio*, and Defendants' attempts to foreclose on the mortgage are therefore unlawful.

Demmler v. Bank One NA, No. 2:05-CV-322, 2006 WL 640499, at *3-4 (S.D. Ohio Mar. 9, 2006) (citing similar cases and concluding that plaintiff's argument was "patently ludicrous").

The "unlawful money" theory is similar, but differs slightly from the "vapor money" theory. Under the "unlawful money" theory, the issuance of "credit" is said to violate Article I, Section 10 of the United States Constitution, which purportedly "requires a state to accept and recognize only gold and silver coin as legal tender."

16

Buckley, 2010 WL 476673, at *8 (citing Rudd v. KeyBank, N.A., No. C2-05-CV-0523, 2006 WL 212096, at *4-5 (S.D. Ohio Jan. 25, 2006)).[3]

In this case, Plaintiffs allege the following:

- "Defendant OCWEN FINANCIAL CORPORATION by and through Ocwen Loan Servicing, LLC (OLS), refused to loan plaintiff legal tender or other depositors' money to fund the alleged bank loan check." (Paragraph 13);

- "The defendant recorded the forged promissory note as a loan from plaintiff to the bank." (Paragraph 18);

- "The defendant used this loan to fund the alleged bank loan check, back to plaintiff." (Paragraph 19);

- "The defendant ... at no time loaned plaintiff legal tender or other depositors' money in the amount of $230,100.00 or repay the

---

3 In Rudd v. KeyBank, N.A., No. 2:05-cv-523, 2006 WL 212096, at *4 (S.D. Ohio Jan. 25, 2006), the plaintiff argued that the bank did not have sufficient assets on hand to cover the loan it gave him. He reasoned that because the money he received was not backed by silver or gold, it was not legal tender. He contended that the bank had "created money out of thin air," and was never at risk because it essentially loaned him back his own credit. He argued that because the notes were void and unenforceable, the foreclosure actions instituted by the bank were unlawful. Citing numerous cases holding that this nation's system of lending money is constitutional, the court held that the plaintiff had failed to state a claim upon which relief may be granted. Id.

17

unauthorized loan it recorded from plaintiff to the bank." (Paragraph 20);
and

- "The defendant ... refused to disclose material facts of the alleged
  agreement, refusing to tell plaintiff if the agreement was for plaintiff to
  fund the alleged bank loan check or if the defendant was to use the bank's
  legal tender or other 'depositors' money to fund the bank loan check."
  (Paragraph 23).

[Doc. 1-1, Compl.].  Plaintiffs appear to be alleging that under either the vapor money
and/or unlawful money theory, the Loan at issue in this case was not made in "legal
tender" and is therefore unenforceable.  Buckley, 2010 WL 476673, at *8.

Courts across the country, including the courts in this district, have uniformly
rejected these and similar theories as lacking any legal foundation whatsoever.  Id.;
see also Thomas v. Countrywide Home Loans, No. 2:09-cv-82, 2010 WL 1328644, at
*2 (N.D. Ga. Mar. 29, 2010) (collecting cases rejecting "vapor credit" theories);
Yeboah v. Bank of New York Mellon, No. 1:12-cv-2139, 2012 WL 4759246, at *5
(N.D. Ga. Aug. 30, 2012) ("Plaintiff's argument is commonly known as the 'vapor
money' theory or a 'no money lent' claim.  Such claims 'fail as a matter of law.'")
(King, M.J.) adopted at 2012 WL 4759242 (N.D. Ga. Oct. 5, 2012) (Thrash, J.);
Mother: Vertis-Mae v. Argent Mortg. Co., LLC, No. 1:07-CV-2469-TWT, 2008 WL

18

1995363, at *3 (N.D. Ga. May 5, 2008), *adopted at* *1 (dismissing complaint that was based on unlawful money theory); <u>McLehan v. Mortg. Elec. Registration Sys.</u>, No. 08-12565, 2009 WL 1542929, at *2 (E.D. Mich. June 2, 2009) ("The vapor money theory ... and 'similar arguments have been rejected by federal courts across the country.'") (internal marks and citations omitted); <u>Roper v. MERS</u>, No. 07-CV-10002, 2007 WL 3244754, at *2 (E.D. Mich. Nov. 1, 2007) (citing cases); <u>Demmler</u>, 2006 WL 640499, at *1, 3-4 (stating that it would be a "waste of judicial resources to delve into the voluminous allegations contained in Plaintiff's twenty-one count complaint" because claims based on the "vapor money" theory are "utterly frivolous" and "patently ludicrous"); <u>Rene v. Citibank NA</u>, 32 F. Supp. 2d 539, 544-45 (E.D.N.Y. 1999) (rejecting claims that because lender did not have an amount equal to the face value of the loan in its vault, and merely "transferred some book entries," lender had created illegal tender) (internal marks omitted); <u>United States v. Schiefen</u>, 926 F. Supp. 877, 880-81 (D.S.D. 1995) (rejecting argument that there was insufficient consideration to secure promissory note because lender had "created money" by means of bookkeeping entry, and noting argument that "United States currency is unbacked paper has been rejected by numerous courts").

This Court likewise rejects Plaintiffs' frivolous claims. <u>Buckley</u>, 2010 WL 476673, at *9. For the reasons stated, I recommend that Defendant's motion to dismiss

AO 72A
(Rev.8/82)

Plaintiffs' claims based on the "vapor money/unlawful money" theories be granted and the claims dismissed.

### c.    12 U.S.C. § 24

Turning next to Plaintiffs' claim that Defendant OFC in some way violated federal banking law 12 U.S.C § 24, both Plaintiffs' complaint and their response to Defendant's Motion to Dismiss fail to provide even a shred of factual support concerning any alleged violation of this statute.  This statute governs national banking associations.  See Bd. of Governors of Fed. Reserve Sys. v. Investment Co. Inst., 450 U.S. 46, 54, 101 S. Ct. 973, 980-81  (1981) (explaining that 12 U.S.C. § 24 applies only to national banks).  Plaintiffs have failed to allege or show that the statute applies in any way to OFC – a financial services holding company.

Plaintiffs have failed to state a plausible claim against Defendant OFC under 12 U.S.C. § 24.  Accordingly, this claim is due to be dismissed.

### d.    Declaratory Judgment

Plaintiffs' complaint next seeks a declaratory judgment "instructing the Plaintiff of his [sic] rights under the law."  [Doc. 1-1 at 6].

Declaratory relief is appropriate when it is necessary to "protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct."  Henderson v. Alverson, 217 Ga. 541, 541, 123 S.E.2d 721, 721-22 (1962);

see also <u>Sullivan v. Div. of Elections</u>, 718 F.2d 363, 365 (11th Cir. 1983) (citation omitted) (stating that a "district court can grant declaratory relief only if there is 'a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests.'").   A court may not "enjoin conduct which is neither threatened nor imminent."   <u>Sullivan</u>, 718 F.2d at 365 (citing <u>Congress of Racial Equality v. Douglas</u>, 318 F.2d 95, 100 (5th Cir. 1963)).

In this case, Plaintiffs' complaint does not allege any future act or conduct about which they are uncertain.  It is undisputed that the Property was foreclosed on in August 2014.  Plaintiffs have identified no other conduct which is either threatened or imminent for which the Plaintiffs seek guidance.

Plaintiffs have failed to show that they are entitled to declaratory relief. Accordingly, I recommend that Defendant's motion to dismiss Plaintiffs' claim for a declaratory judgment be granted.

### e.    Injunctive Relief

Plaintiffs' complaint next asks the Court to enjoin Defendant from foreclosing and selling the Property.  As the Property was apparently sold via nonjudicial foreclosure on August 5, 2014, Plaintiffs' request is moot.

Even if Plaintiffs' request for an injunction were not moot, Plaintiffs have not met their burden for obtaining injunctive relief.  It is settled law in this Circuit that a

21

preliminary injunction is an "extraordinary and drastic remedy." <u>Zardui-Quintana v.</u> <u>Richard</u>, 768 F.2d 1213, 1216 (11th Cir. 1985).  There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction, if issued, would not be adverse to the public interest.  <u>Id.</u>; <u>see also</u> <u>Siegel v. LePore</u>, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam).

Plaintiffs have not alleged or established that they will suffer irreparable injury if not granted injunctive relief, as the foreclosure sale has apparently already occurred.[4]

Furthermore, under Federal Rule of Civil Procedure 65, the court may not issue a preliminary injunction or a TRO unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  Plaintiffs have not tendered or offered to tender any amount as security for an injunction.

_____

4  It appears from the record that Plaintiffs filed their complaint in state court approximately one week prior to the scheduled foreclosure sale, but did not serve the defendant with the summons and complaint until after the sale had already taken place. [Doc. 1-1 at 2; Doc. 1 at 2 ¶ 3 & at 3 n.2].

22

Under Georgia law, Plaintiffs are also not entitled to enjoin a foreclosure sale unless they first pay or tender to the lender the amount admittedly due.  See Smith v. Citizens & S. Fin. Corp., 245 Ga. 850, 852, 268 S.E.2d 157, 159 (1980); Mickel v. Pickett, 241 Ga. 528, 535, 247 S.E.2d 82, 87 (1978).  The complaint filed by Plaintiffs does not allege tender and there is no evidence that tender of the total amount due on the Loan has ever been made.

Plaintiffs have failed to state a plausible claim for injunctive relief.  For all the reasons stated, I recommend that Defendant's motion to dismiss be granted with regard to Plaintiffs' request for a temporary restraining order.

### f.    Attorney's Fees

Plaintiffs' complaint further asks the Court to grant them attorney's fees and costs, pursuant to "the Civil Rights Attorney's Fee Award Act of 1976, 90 Stat. 2641, as amended 42 USC 1988." [Doc. 1-1 at 6].  Plaintiffs' complaint, however, sets forth no allegations in support of such a claim.  Even if it did, the United States Supreme Court has held that a *pro se* litigant is not entitled to fees under the Civil Rights Attorney's Fees Awards Act, even if the litigant is a lawyer.  Kay v. Ehrler, 499 U.S. 432, 437-38, 111 S.Ct. 1435, 1436-37 (1991).  The *pro se* Plaintiffs have failed to state a plausible claim for attorney's fees and costs in this case.  Accordingly, Plaintiffs' claim for fees and costs is due to be dismissed.

AO 72A
(Rev.8/82)

### g.    Remaining Allegations

To the extent Plaintiffs' complaint makes passing references to alleged violations of other statutes and laws, fraud, misrepresentation, deceit, bank fraud, constructive fraud, bad faith, lack of full disclosure, forgery, wrongful foreclosure, operating without Plaintiffs' knowledge, and deprivation of due process, the allegations are without sufficient factual or legal support, and should be dismissed for failure to satisfy the rudimentary pleading requirements of Rule 8(a) and, with respect to Plaintiffs' fraud allegations, the heightened pleading requirements of Fed. R. Civ. P. 9(b).

## IV.  CONCLUSION

In sum, Plaintiffs' "threadbare conclusions," "naked assertions," and citations to inapplicable statutes do not survive the Rule 12(b)(6) standard and are at best speculative.   Accordingly, and for all the reasons stated, I **RECOMMEND** that Defendant's Motion to Dismiss [Doc. 4] be **GRANTED** in its entirety.

The Court has construed and treated Plaintiffs' Notice of Objection to Removal of Case and Motion to Dismiss [Doc. 6] and Plaintiffs' other filings titled "motions to dismiss" [Docs. 5, 9 and 10] as responses in opposition and not separate motions. Accordingly, the Clerk of Court is **DIRECTED** to restyle docket entry 5 as Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss; docket entry 6 as Plaintiffs'

24

Response in Opposition to Defendant's Notice of Removal; docket entry 9 as Plaintiffs' Surreply in Opposition to Defendant's Motion to Dismiss; and docket entry 10 as Plaintiffs' Surreply in Opposition to Defendant's Notice of Removal.  To the extent the document Plaintiffs filed at docket entry 6 should more properly be construed as a motion to remand, I **RECOMMEND** that the motion [Doc. 6] be **DENIED**.

The Clerk is further **DIRECTED** to terminate this reference.

**IT IS SO RECOMMENDED AND ORDERED**, this 27th day of January, 2015.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)